## Volunteer Coast Guard Reserve Veterans

ADAMS, Deputy Attorney General, July 8, 1948.—
This department is in receipt of your request for advice
as to whether a civil service employe in the Liquor
Control Board who was enrolled as a temporary mem-
ber of the United States Coast Guard Reserve during
World War II and who received a certificate of honor-
able disenrollment, is entitled to veterans' preference
under the Act of May 22, 1945, P. L. 837, as amended,
51 PS §492.1 et seq. The title of the Act of 1945,
supra, reads:

"An Act

"Providing for and requiring in certain cases pref-
erence in appointments to public position or on public
works for honorably discharged persons who served
in the military or naval service during any war in
which the United States engaged; and in certain cases
for the widows and wives of such persons."

Section 8 of the act, 51 PS §492.8 reads as follows:

"This act shall be construed as being the exclusive
law applying to the Commonwealth, and its political
subdivisions, in giving preference to soldiers in ap-
pointment or promotion to, or retention in, public posi-
tion or on public works."

The word "soldier" is defined in section 1 of the act,
51 PS §492.1, as follows:

"The word 'soldier' as used in this act, shall be construed to mean a person who served in the armed forces of the United States, or in any women's organization officially connected therewith, during any war in which the United States engaged, and who has an honorable discharge from such service."

Section 2 of the act, 51 PS §492.2, reads as follows:

"When any soldier shall take any civil service appointment or promotional examination for a public position under the Commonwealth, or under any political subdivision thereof, he shall be given credit in the manner hereinafter provided; for the discipline and experience represented by his military training and for the loyalty and public spirit demonstrated by his service for the preservation of his country."

The documents attached to your request reveal that the civil service employe of your board was enrolled in the United States Coast Guard Reserve under date of July 26, 1943, as a seaman first class, and he was disenrolled under honorable conditions on September 30, 1945, after having served on part-time duty without pay as a member of the volunteer port security force. Your employe's part-time duty in that branch of the armed forces of the United States amounted to a service of about 12 hours per week and, in the performance of that service, it was not necessary for him to relinquish his position with the Liquor Control Board nor to change his residence.

The United States Coast Guard Reserve was established and created by section 201 of the Act of Congress of February 19, 1941, c. 8, 55 Stat. at L. 11, as last amended by section 1 of the Act of July 25, 1947, c. 327, 61 Stat. at L. 449, 14 U. S. C. §301, which provides as follows:

"There is created and established a United States Coast Guard Reserve (hereinafter referred to as the 'Reserve'), the purpose of which is to provide a trained force of officers and men which, added to regular per-

sonnel of the Coast Guard, will be adequate to enable that service to perform such extraordinary duties as may be necessitated by emergency conditions."

Section 204 of the Act of Congress, supra, 14 U. S. C. §304 provides:

"The Reserve shall be a *military organization* administered by the Commandant, under the direction of the Secretary of the Treasury, and the Commandant shall, with the approval of the Secretary of the Treasury and the concurrence of the Secretary of the Navy, prescribe such regulations as may be necessary to effectuate the purposes of this subchapter." (Italics supplied.)

Section 205 of the aforesaid act of Congress, supra, 14 U. S. C. §305 provides:

"Any member of the Reserve may be ordered to active duty by the Commandant in time of war or during any period of national emergency declared by the President to exist and be required to perform active duty throughout the war or until the President declares that such national emergency no longer exists; but in time of peace, except for disciplinary purposes as provided in section 309 hereof, no such member shall be ordered to or continued on active duty without his consent: Provided, That the Commandant may release any member from active duty either in time of war or in time of peace. *Members of the Reserve while engaged on active duty shall be vested with the same power, authority, rights, and privileges as members of the regular Coast Guard of similar ranks, grades, or ratings.* In time of peace members of the Coast Guard Reserve may, with their consent, be given additional training or other duty either with or without pay, as may be authorized by the Secretary of the Treasury. When authorized training or other duty without pay is performed by members of the Reserve they may, in the discretion of the Secretary of the Treasury, be furnished with transportation to and

from such duty, with subsistence and transfers en route and, during the performance of such duty, be furnished subsistence in kind or commutation thereof at a rate to be fixed from time to time by the Secretary of the Treasury." (Italics supplied.)

We have been unable to find any decision of a Pennsylvania court which answers the question you have proposed. However, the case of Mitchell v. Cohen, 333 U. S. 411 (1948) is analogous and applicable. In that case the question was raised as to whether or not service with a volunteer port security force of the United States Coast Guard Reserve entitled one to veterans' preference in Federal employment under the Veterans' Preference Act of 1944. The Veterans' Preference Act of 1944, 58 Stat. at L. 387, as amended, 5 U. S. C. §851, et seq., established preference in Government employment for those ex-service men and women who have served in active duty in any branch of the armed forces of the United States during any war and have separated therefrom under honorable conditions.

On page 417 of its opinion, the Supreme Court said:

"Respondents claim that their service with the Volunteer Port Security Force brings them squarely within this statutory provision, hence entitling them to veterans' preference. It is undisputed, of course, that they did serve part-time on active duty in a branch of the armed forces of the United States during World War II and that they were separated therefrom under honorable conditions. The crucial question is whether they thereby are 'ex-servicemen' within the meaning of this particular statute. On that score, respondents urge that this term must be given its ordinary and literal meaning so as to refer to all those who performed military service. The length or continuity of active duty and the presence or absence of compensation become immaterial from respondents' point of view; the mere performance of some type of military service is thought to be sufficient. Since respondents concededly did perform military service

while on intermittent active duty with the Volunteer Port Security Force, the conclusion is reached that they are 'ex-servicemen' within the contemplation of this statute. Resort to the legislative history and other secondary sources is said to be unwarranted, so clear and obvious is the meaning of that term.

"In our opinion, however, the term 'ex-servicemen' has no single, precise definition which permits us to read and apply that term without help from the context in which it appears and the purpose for which it was inserted in the statute. Ex-servicemen are indeed those who have performed military service. And they may include those who have served on active duty only part-time and without compensation. But this designation may also be confined to a more definite and narrow class of individuals who performed military service, to those whose full time and efforts were at the disposal of military authorities and whose compensation included military pay and allowances. Such ex-servicemen are those who completely disassociated themselves from their civilian status and their civilian employment during the period of their military service, suffering in many cases financial hardship and separation from home and family. They formed a great bulk of the regular armed forces during World War II. In the popular mind, they were typified by the full-fledged soldier, sailor, marine or coast guardsman. Our problem, of course, is whether Congress used the term 'ex-servicemen' in the broad or narrow sense when it enacted the Veterans' Preference Act. And the answer to that problem is to be determined by an examination of the statutory scheme rather than by reliance upon dictionary definitions.

. . . . . . . . .

"Throughout the legislative reports and debates leading to the birth of this statute is evident a consistent desire to help only those who had sacrificed their normal pursuits and surroundings to aid in the

struggle to which this nation had dedicated itself. It was the veterans or ex-servicemen who had been completely divorced from their civilian employment by reason of their full-time service with the armed forces who were the objects of Congressional solicitude. Reemployment and rehabilitation were considered to be necessary only as to them.

"There is nothing to indicate that the legislative mind in this instance was directed toward granting special benefits or rewards to those who performed military service without interference with their normal employment and mode of life. As to them, assistance in reëmployment and rehabilitation was thought unnecessary. Their civilian employment status remained unchanged by reason of their military service. And since their civilian life was substantially unaltered, there was no problem of aiding their readjustment back to such a life. Indeed, to have given them preference rights solely because of their part-time military service would have been inconsistent with the professed aims of the statutory framers. Such preference would have diluted the benefits conferred on those ex-servicemen who had made full-scale sacrifices; and it would have been inequitable to the many civilians who also had participated voluntarily in essential war and defense activities but who had not been directly connected with a branch of the armed forces."

The Supreme Court held that part-time service with a volunteer port security force of the United States Coast Guard Reserve did not entitle one to veterans' preference in Federal employment. The reasoning of the Supreme Court with regard to the Federal act applies with equal force to the Pennsylvania act.

The Pennsylvania act is limited to soldiers, and a soldier is defined in section 1 as ". . . a person . . . who has an honorable discharge. . . ." In this respect the Pennsylvania act is more specific than the Federal act.. As the employe of the Pennsylvania Liquor Con-

trol Board possessed a certificate of disenrollment, and not an honorable discharge, he does not meet the requirements of the Pennsylvania act.

We are therefore of the opinion, and you are accordingly advised, that a civil service employe of the Pennsylvania Liquor Control Board who performed part-time service with a volunteer port security force of the United States Coast Guard Reserve is not entitled to veterans' preference under the Act of May 22, 1945, P. L. 837.